UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x

MOHAMMED RAZZAK, MOHAMMAD
SIDDIQUE, and MOHAMMAD ISLAM,
on behalf of themselves and others similarly
situated,

                    Plaintiffs,

       v.

JUNO USA, LP, VULCAN CARS LLC,
TALMON MARCO, and GT FORGE, INC.,

           Defendants.

---------------------------------------------------------------- x

Case No. 1:17-cv-04373 (DLC)

## OPENING MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULES 12(B)(1) AND 12(B)(6) BY DEFENDANTS GT FORGE, INC., JUNO USA, LP, AND VULCAN CARS LLC

John J. Clarke, Jr.
john.clarke@dlapiper.com
Keara M. Gordon
keara.gordon@dlapiper.com
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York 10020
(212) 335-4500

Attorneys for Defendants
 GT Forge, Inc., Juno USA, LP,
 and Vulcan Cars LLC

Dated: August 4, 2017

Table of Contents

Page

PRELIMINARY STATEMENT ................................................................ 1

SUMMARY OF ALLEGATIONS ............................................................. 3

ARGUMENT ........................................................................................... 7

I.     THE COMPLAINT SHOULD BE DISMISSED FOR
       LACK OF SUBJECT MATTER JURISDICTION .......................................... 7

       A.     Plaintiffs Have Not Alleged a Federal Claim ...................................... 7

       B.     Plaintiffs Have Not Alleged the Elements of
              Diversity Jurisdiction ............................................................ 9

       C.     There Is No Basis to Exercise Supplemental Jurisdiction ................... 10

II.    THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO
       STATE A CLAIM AGAINST GT FORGE, JUNO USA OR VULCAN CARS .......... 10

       A.     Plaintiffs Have Not Alleged a Viable Claim for "False Advertising"
              Under Either Federal or State Law .................................................. 12

              1.     There Is No Private Right of Action Under the
                     Federal Trade Commission Act ............................................. 12

              2.     Plaintiffs Have Not Stated a Claim Under Sections 349 or 350
                     of the New York General Business Law.................................. 12

       B.     Plaintiffs Do Not Plead an Actionable Claim for
              Misrepresentation, Fraud, or Securities Fraud ............................... 14

              1.     Plaintiffs' "Group Pleading" of Fraud Requires Dismissal .............. 14

              2.     Plaintiffs Have Not Alleged Any Actionable
                     Misstatement or Omission ................................................... 15

              3.     Plaintiffs Could Not Have Reasonably Relied on Statements
                     Concerning the RSUs that Differed from the RSU Plan.................. 18

              4.     Plaintiffs Have Not Pleaded Cognizable Injury ............................... 19

       C.     Plaintiffs' Have Not Alleged an Actionable Breach of Contract......................... 19

       D.     Plaintiffs Have Not Alleged a Breach of the Implied Covenant
              of Good Faith and Fair Dealing ........................................................ 21

<u>Page</u>

    E.      Plaintiffs Have Not Alleged a Claim for Conversion ........................................... 22

    F.      Plaintiffs Do Not Have Standing to Assert a Shareholder
           Derivative Claim on Behalf of Juno USA, LP...................................................... 23

III.    THE CLAIMS OF TWO NAMED PLAINTIFFS SHOULD BE DISMISSED
      IN FAVOR OF ARBITRATION......................................................................................... 24

CONCLUSION..................................................................................................................... 25

Table of Authorities

Page(s)

Cases

*Abrams v. Donati*,
66 N.Y.2d 951, 498 N.Y.S.2d 782 (1985) ...................................................24

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*,
921 F. Supp. 2d 158 (S.D.N.Y. 2013)..........................................................9

*Alfred Dunhill Ltd. v. Interstate Cigar Co.*,
499 F.2d 232 (2d Cir. 1974) ................................................................8, 12

*Arbitron, Inc. v. 3 Cities, Inc.*,
438 F. Supp. 2d 216 (S.D.N.Y. 2006)..........................................................7

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S. Ct. 1937 (2009)...................................................10, 11

*Assured Guar. (UK) Ltd v. J.P. Morgan Inv. Mgmt. Inc.*,
18 N.Y.3d 341, 939 N.Y.S.2d 274 (2011) ...................................................17

*Atuahene v. City of Hartford*,
10 F. App'x 33 (2d Cir. 2001) ..................................................................11

*Am. Express Co. v. Italian Colors Rest.*,
133 S. Ct. 2304 (2013)............................................................................21

*AVRA Surgical Robotics, Inc. v. Gombert*,
41 F. Supp. 3d 350 (S.D.N.Y. 2014)...........................................................10

*Axiom Inv. Advisors, LLC v. Deutsche Bank AG*,
___ F. Supp. 3d ___, 2017 WL 590320 (S.D.N.Y. Feb. 13, 2017) .........................12

*Bangkok Crafts Corp. v. Capitolo di San Pietro in Vaticano*,
331 F. Supp. 2d 247 (S.D.N.Y. 2004)..........................................................15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 127 S. Ct. 1955 (2007)..........................................................11

*Bischoff v. Boar's Head Provisions Co.*,
436 F. Supp. 2d 626 (S.D.N.Y. 2006)...........................................................9

*Caterpillar Inc. v. Williams*,
482 U.S. 386, 107 S. Ct. 2425 (1987)...........................................................8

Page(s)

*Chefs Diet Acquisition Corp. v. Lean Chefs, LLC*,
No. 14-CV-8467 (JMF), 2016 WL 5416498 (S.D.N.Y. Sept. 28, 2016) ..............................20

*China Media Exp. Holdings, Inc. by Barth v. Nexus Executive Risks, Ltd.*,
182 F. Supp. 3d 42 (S.D.N.Y. 2016)...................................................................................24

*Clifton v. Vista Computer Servs., LLC*,
No. 01 Civ. 10206 (JSM), 2002 WL 1585550 (S.D.N.Y. July 16, 2002) ........................18, 19

*Cohen v. KIND L.L.C.*,
207 F. Supp. 3d 269 (S.D.N.Y. 2016).....................................................................................9

*Collins & Aikman Prods. Co. v. Building Sys., Inc.*,
58 F.3d 16 (2d Cir. 1995)........................................................................................................25

*Colonial Funding Network, Inc. for TVT Capital, LLC v. Epazz, Inc.*,
___ F. Supp. 3d ___, 2017 WL 1944125 (S.D.N.Y. May 9, 2017) .......................................18

*CPC Int'l Inc. v. McKesson Corp.*,
70 N.Y.2d 268, 519 N.Y.S.2d 804 (1987) .............................................................................17

*Crye Precision LLC v. Duro Textiles, LLC*,
112 F. Supp. 3d 69 (S.D.N.Y. 2015)........................................................................................7

*Dalton v. Educ. Testing Serv.*,
87 N.Y.2d 384, 639 N.Y.S.2d 977 (1995) ........................................................................21, 22

*Difolco v. MSNBC Cable L.L.C.*,
622 F.3d 104 (2d Cir. 2010)......................................................................................................4

*Dreisbach v. Murphy*,
658 F.2d 720 (9th Cir. 1981) ....................................................................................................8

*Duff & Phelps, LLC v. Vitro S.A.B. de C.V.*,
18 F. Supp. 3d 375 (S.D.N.Y. 2014).........................................................................................7

*Eaves v. Designs for Fin., Inc.*,
785 F. Supp. 2d 229 (S.D.N.Y. 2011).....................................................................................13

*Elmaliach v. Bank of China Ltd.*,
No. 09 Civ. 2130 (PGG), 2010 WL 1172829 (S.D.N.Y. Mar. 26, 2010)..................................8

*Exxonmobil Inter-America, Inc. v. Advanced Info. Eng'g Servs., Inc.*,
328 F. Supp. 2d 443 (S.D.N.Y. 2004)......................................................................................13

*Fin. Guar. Ins. Co. v. Putnam Advisory Co.*,
783 F.3d 395 (2d Cir. 2015).....................................................................................................14

Page(s)

*Granite Partners, L.P. v. Bear, Stearns & Co.*,
    17 F. Supp. 2d 275 (S.D.N.Y. 1998)....................................................................................21

*Grgurev v. Licul*,
    229 F. Supp. 3d 267 (S.D.N.Y. 2017)......................................................................................4

*Harris v. Provident Life & Accident Ins. Co.*,
    310 F.3d 73 (2d Cir. 2002)....................................................................................................22

*Hendrickson v. United States*,
    791 F.3d 354 (2d Cir. 2015)....................................................................................................7

*Herrick Co. v. SCS Commc'ns, Inc.*,
    251 F.3d 315 (2d Cir. 2001)....................................................................................................9

*Hughes v. Ester C Co.*,
    930 F. Supp. 2d 439 (E.D.N.Y. 2013) ....................................................................................8

*ICBC (London) PLC v. Blacksands Pac. Grp., Inc.*,
    No. 15 Civ. 0070 (LAK), 2015 WL 5710947 (S.D.N.Y. Sept. 29, 2015) .............................18

*In re Standard & Poor's Rating Agency Litig.*,
    23 F. Supp. 3d 378 (S.D.N.Y. 2014)........................................................................................7

*Kai Peng v. Uber Techs., Inc.*,
    ____ F. Supp. 3d ____, 2017 WL 722007 (E.D.N.Y. Feb. 23, 2017) ..............................21, 25

*Knight-Harris v. Wells Fargo Bank, N.A.*,
    No. 16 Civ. 2605 (ER), 2017 WL 238439 (S.D.N.Y. Jan. 18, 2017)...................................8, 9

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375, 114 S. Ct. 1673 (1994)......................................................................................7

*Kregos v. Associated Press*,
    3 F.3d 656 (2d Cir. 1993)......................................................................................................19

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    134 S. Ct. 1377 (2014) .........................................................................................................12

*Manning Int'l Inc. v. Home Shopping Network, Inc.*,
    152 F. Supp. 2d 432 (S.D.N.Y. 2001)......................................................................................8

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000)....................................................................................................7

*Mastafa v. Chevron Corp.*,
    770 F.3d 170 (2d Cir. 2014)....................................................................................................7

Page(s)

*Mehlenbacher v. Akzo Nobel Salt, Inc.*,
 216 F.3d 291 (2d Cir. 2000)..................................................................10

*Morrissey v. Gen. Motors Corp.*,
 21 F. App'x 70 (2d Cir. 2001) ...............................................................18

*New York v. Shinnecock Indian Nation*,
 686 F.3d 133 (2d Cir. 2012).....................................................................8

*Ochre LLC v. Rockwell Architecture Planning & Design, P.C.*,
 No. 12 Civ. 2837 (KBF), 2012 WL 6082387 (S.D.N.Y. Dec. 3, 2012) .................................11

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
 85 N.Y.2d 20, 623 N.Y.S.2d 529 (1995) ................................................13

*OTG Brands, LLC v. Walgreen Co.*,
 No. 13-cv-09066 (ALC), 2015 WL 1499559 (S.D.N.Y. Mar. 31, 2015) .........................22, 23

*Pappas v. Tzolis*,
 20 N.Y.3d 228, 958 N.Y.S. 2d 656 (2012) .............................................22

*Patrico v. Voya Fin., Inc.*,
 No. 16 Civ. 7070 (LGS), 2017 WL 2684065 (S.D.N.Y. June 20, 2017)...............................11

*Prickett v. N.Y. Life Ins. Co.*,
 896 F. Supp. 2d 236 (S.D.N.Y. 2012).....................................................24

*Red Ball Interior Demolition Corp. v. Palmadessa*,
 874 F. Supp. 576 (S.D.N.Y. 1995) .......................................................14

*Reis, Inc. v. Spring11 LLC*,
 No. 15 Civ. 2836 (PGG), 2016 WL 5390896 (S.D.N.Y. Sept. 26, 2016) .............................19

*Rennaker Co. Consulting, Inc. v. TLM Grp., LLC*,
 No. 16 Civ. 3787 (DAB), 2017 WL 2304302 (S.D.N.Y. May 18, 2017)...............................20

*Ritani, LLC v. Aghjayan*,
 970 F. Supp. 2d 232 (S.D.N.Y. 2013)..................................................14, 15

*Rocanova v. Equitable Life Ins. Soc'y*,
 83 N.Y.2d 603, 612 N.Y.S.2d 339 (1994) ..............................................15

*Salahuddin v. Cuomo*,
 861 F.2d 40 (2d Cir. 1988)...................................................................11

*Scherer v. Equitable Life Assurance Soc'y of the U.S.*,
 347 F.3d 394 (2d Cir. 2003)...................................................................10

Page(s)

*Schlenger v. Fid. Emp'r Servs. Co.*,
    785 F. Supp. 2d 317 (S.D.N.Y. 2011)......................................................................18

*Semerdjian v. McDougal Littell*,
    No. 07 Civ. 7496 (LMM), 2008 WL 110942 (S.D.N.Y. Jan. 2, 2008)....................19

*Sheth v. N.Y. Life Ins. Co.*,
    273 A.D.2d 72, 709 N.Y.S.2d 74 (1st Dep't 2000) .................................................13

*Small v. Lorillard Tobacco Co.*,
    94 N.Y.2d 43, 698 N.Y.S.2d 615 (1999) .................................................................13

*Specht v. Netscape Commc'ns Corp.*,
    150 F. Supp. 2d 585 (S.D.N.Y. 2001)......................................................................11

*Stutman v. Chem. Bank*,
    95 N.Y.2d 24, 709 N.Y.S.2d 892 (2000) .................................................................12

*Sun Micro Med. Techs. Corp. v. Passport Health Commc'ns, Inc.*,
    No. 06 Civ. 2083 (RWS), 2006 WL 3500702 (S.D.N.Y. Dec. 4, 2006) .................18

*Taylor v. N.Y. Life Ins. & Annuity Corp.*,
    No. 16-cv-06121 (PKC), 2017 WL 2773699 (S.D.N.Y. June 26, 2017)..................11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308, 127 S. Ct. 2499 (2007)....................................................................3, 9

*U1it4Less, Inc. v. FedEx Corp.*,
    No. 11-cv-1713 (KBF), 2015 WL 3916247 (S.D.N.Y. June 25, 2015)...................21

*Universe Antiques, Inc. v. Vareika*,
    826 F. Supp. 2d 595 (S.D.N.Y. 2011)......................................................................23

*Wilson v. Kellogg Co.*,
    628 F. App'x 59 (2d Cir. 2016) ..................................................................................4

*Wolff v. Rare Medium, Inc.*,
    171 F. Supp. 2d 354 (S.D.N.Y. 2001)......................................................................20

Statutes and Rules

9 U.S.C. § 1, *et seq.*............................................................................................................24

15 U.S.C. § 78u-4 ...........................................................................................................2, 9

15 U.S.C. § 1051, *et seq.*...................................................................................................12

Page(s)

28 U.S.C. § 1331 ..................................................................................................................7

28 U.S.C. § 1332 ...........................................................................................................2, 9, 10

28 U.S.C. § 1367 ...............................................................................................................2, 10

6 Del. C. § 17-1002 ................................................................................................................23

N.Y. Gen. Bus. L. § 349 .....................................................................................................2, 12

N.Y. Gen. Bus. L. § 350 .....................................................................................................2, 12

N.Y. Gen. Bus. Law § 352-c(1)(a) ...........................................................................................17

Fed. R. Civ. P. 9(b) ............................................................................................................2, 14

Fed. R. Civ. P. 12(b)(1) ........................................................................................................1, 7

Fed. R. Civ. P. 12(b)(6) .......................................................................................................1, 10

Defendants GT Forge, Inc., Juno USA, LP, and Vulcan Cars LLC respectfully submit this memorandum of law in support of their motion to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction or, in the alternative, for failure to state a claim upon which relief can be granted.

## PRELIMINARY STATEMENT

Plaintiffs are drivers in New York City for several companies, including Uber and Lyft. Beginning in February 2016, they also drove for the Juno-brand transportation service.  They claim that they agreed to do so because of the prospect of earning restricted stock units ("RSUs") issued by Juno, Inc., which is not named as a defendant.  The RSUs were governed by a Juno, Inc. benefits plan that set forth their terms and conditions.

In April 2017, Juno, Inc. announced that it was selling its business to another competitor, known as Gett.  Plaintiffs allege that "[a]s part of the announcement, Juno announced that drivers who had received shares in the Company would either:  have those share[s] extinguished with no compensation, or receive an amount per share to be determined" by Juno.  Compl. ¶ 42.  This alleged harm is the thread that connects most of plaintiffs' claims.  Plaintiffs fail to mention that by that time no Juno drivers could have completed the two-year minimum service requirement for vesting of the RSUs or that the RSU Plan expressly permitted cancellation of the RSUs under the circumstances.

Regardless, the RSU-related claims are asserted against the wrong parties.  GT Forge, Inc. is a subsidiary of GT Gettaxi Ltd. ("Gett"), which acquired Juno's assets in the April 2017 transaction, and it is not alleged to have had any interactions with plaintiffs or members of the putative class.  Juno USA, LP and Vulcan Cars LLC are operating companies that were acquired in that transaction.  Neither issued the RSUs or is a party to the RSU plan that was developed and sponsored by Juno, Inc.

Apart from seeking relief from the wrong defendants, the complaint should be dismissed for many other pleading failures. *First*, the complaint fails to plead federal subject matter jurisdiction. There is no private right of action for plaintiffs' only federal claim, for false advertising under the Federal Trade Commission Act. Although the complaint also includes a claim for "securities fraud," that claim makes no reference to federal law, nor have plaintiffs complied with procedural requirements for asserting such a claim if it were federal. *See* 15 U.S.C. § 78u-4.

Plaintiffs similarly fail to satisfy the requirements for diversity jurisdiction. Plaintiffs are citizens of New York, which also is the principal place of business of defendant GT Forge, defeating complete diversity, 28 U.S.C. § 1332(a)(1), (c)(1), and the complaint also fails to satisfy the amount-in-controversy requirement. *See* 28 U.S.C. § 1332(b). Plaintiffs waived any right to participate in a class action in their drivers' agreements, meaning that class action exceptions to the diversity rules cannot apply. Without any basis for the Court to exercise original jurisdiction, supplemental jurisdiction cannot be exercised. *See* 28 U.S.C. § 1367(a).

*Second*, even if the Court could exercise jurisdiction, plaintiffs have failed to plausibly allege any actionable claim against GT Forge, Juno USA or Vulcan Cars. The list of the pleading failures against those defendants is as long as the list of plaintiffs' unfounded claims:

- There is no private right of action for "false advertising" under the Federal Trade Commission Act (Count I);

- Plaintiffs do not allege "consumer-oriented" conduct as required for a claim under sections 349 and 350 of the New York General Business Law (Count II);

- Plaintiffs' fraud claims do not provide the specificity required by Federal Rule 9(b); they impermissibly group defendants together and do not identify the

alleged misrepresentations, the maker of those alleged misrepresentations, or other basic details of the claims (Counts V and VI);

- Plaintiffs' claim for breach of contract does not include even rudimentary information, such as the parties to the alleged contract, the contract provision that allegedly was breached, or the facts allegedly amounting to a breach.  Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing suffers from similar flaws (Counts III and IV);

- The driver agreements preclude plaintiffs' claim for conversion, which has not been pleaded adequately in any event (Count VIII); and

- Plaintiffs are not holders of ownership interests in Juno USA, LP and cannot assert a "shareholder derivative" on behalf of that entity (Count VII).

*Third*, plaintiffs' driver agreements include a broad arbitration agreement relating to their service as Juno drivers.  One of the three named plaintiffs opted out of that provision, but the others accepted it.  Their claims must be dismissed in favor of arbitration.

## SUMMARY OF ALLEGATIONS[1]

### A.   The Parties

Plaintiffs are New York residents who allegedly drive for the Uber, Lyft, and Juno-brand transportation networks.  Compl. ¶¶ 2, 10, 19-21.  They purport to bring this action on behalf of themselves and all other similarly-situated Juno drivers.  *Id.* ¶¶ 68-76.

Defendant Juno USA, LP is a Delaware limited partnership that "launched in or around February 2016 [ ] bill[ing] itself [as] a 'pro-driver' rideshare company."  *Id.* ¶ 34.  Vulcan Cars

---

[1] The well-pleaded allegations of the complaint are assumed to be true solely for purposes of this motion to dismiss and only to the extent they are not contradicted by other allegations or documents incorporated by reference.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S. Ct. 2499, 2509 (2007).

LLC is a Delaware limited liability company that is wholly owned by Juno USA, LP.  *Id.* ¶¶ 7,

23.  Vulcan Cars is the counter-party to plaintiffs' independent driver agreements.  *See*

Declaration of Ronen Ben-David dated August 4, 2017 ("Ben-David Decl."), Exhs. A, B, & C.[2]

Defendant Talmon Marco allegedly is the founder of Juno and chief executive officer of

Juno USA, LP.  Compl. ¶ 24.

Defendant GT Forge, Inc. is a Delaware corporation with its principal place of business

in New York.  *Id.* ¶ 25; *see* Ben-David Decl. ¶ 3.  GT Forge is a wholly owned subsidiary of GT

Gettaxi, Ltd., which acquired Juno USA, LP and Vulcan Cars LLC in a transaction announced in

April 2017.  *See id.* ¶ 42.  Juno, Inc., which issued the RSUs, is not named as a defendant in this

action.

### B.   Plaintiffs' Claims

Plaintiffs allege that "Juno" began operations in or around February 2016 as a "'pro-

driver' rideshare company" in competition with existing services such as Uber and Lyft.  *Id.* ¶

34.  According to plaintiffs, "Juno" "promoted and advertised that its drivers were owners . . .

and that it would distribute equity to all its drivers . . . ."  *Id.* ¶ 35.  Plaintiffs allege that "Juno"

offered drivers a "chance to share in the profits of the [] company," so that it would be able "to

attract drivers and customers away from Uber and Lyft."  *Id.*

Plaintiffs allege that they were highly rated drivers for Uber and Lyft who "were offered

an attractive compensation package to switch from Uber to Juno" that included "an up-front

---

[2] The terms of plaintiffs' driver agreements and of the RSUs are incorporated by reference in the complaint and can be considered on this motion to dismiss.  *Wilson v. Kellogg Co.*, 628 F. App'x 59, 60 (2d Cir. 2016).  Even if the documents are not deemed to be incorporated by reference, "the complaint 'relies heavily upon [their] terms and effect,' thereby rendering the document[s] 'integral' to the complaint," and permitting them to be considered by the court on a motion to dismiss.  *Grgurev v. Licul*, 229 F. Supp. 3d 267, 283 (S.D.N.Y. 2017) (quoting *Difolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010)).

payment that served as a 'signing bonus' . . . , lower commissions deducted from their fares, and profit sharing."  *Id.* ¶ 37.  The complaint alleges that these "representations and advertisements" were the "key determining factors in [p]laintiffs' decisions to transition to Juno full time."  *Id.* ¶ 38.

To begin driving for the Juno brand, each of the plaintiffs was required to enter into an independent contractor driver agreement with Vulcan Cars.  *See* Ben-David Decl., Exhs. A, B, & C.  The agreements included an arbitration provision, from which a driver could elect to opt out. *See id.* § 15.  One of the three named plaintiffs elected to opt-out of the arbitration clause, but the other two affirmatively accepted it.  *See* Ben-David Decl., Exhs. A & B at 18, C at 19.  The agreements also included an express waiver of "any right to participate in any class action or collective action as against the other party, regardless whether in court or in arbitration."  *Id.* § 14.2.  There was no opt-out available from the class action waiver.

The RSUs were governed by a Juno, Inc. benefits plan, which along with a form of award agreement set forth their terms and conditions (the "RSU Plan").  *See* Declaration of Avital Sterngold dated August 4, 2017 ("Sterngold Decl."), Exh A, RSU Plan.  Under the RSU Plan, drivers would "receive a benefit with respect to an RSU only if it vests."  *Id*. at 14; *see* Compl. ¶ 8.  To obtain vesting, a driver was required to drive for Juno for 120 hours or more in 24 months out of a consecutive 30 month period.  In addition, there had to be an "IPO" or "Change in Control" of Juno, Inc., as those terms were defined in the RSU Plan, within seven years after the RSU award date.  Sterngold Decl., Exh. A at 14; s*ee* Compl. ¶ 66.  The RSU Plan permitted the board of directors of Juno, Inc. "at any time," to "terminate or amend th[e] Plan in any respect," RSU Plan § 17, and provided that an acquiror in a "Change of Control" transaction might "refuse[] to assume, convert, or replace such awards."  RSU Plan § 13.1.

In April 2017, Juno announced that its business would be acquired by Gett.  Compl. ¶¶ 42, 54.  Juno also announced that the RSU Plan would be terminated effective immediately. *Id.* ¶ 56.  Because Juno only had "launched in or around February 2016," *id.* ¶ 34, by that date no driver could have driven at least 120 hours for at least 24 out of 30 consecutive months. Nevertheless, drivers were notified that they would receive "payments . . . in connection with the termination of the Juno RSU program to reflect each driver's contribution to Juno."  *Id.* ¶ 57. Plaintiffs Mohammad Islam and Mohammed Razzak allege that they received cash payments for their RSUs.  *Id.* ¶¶ 59-60.

Separately, plaintiffs allege that Juno "improperly calculated its commission based upon the net fare, which it deemed included taxes and ancillary fees (e.g., Black Car Fund), causing [p]laintiffs and putative class members to bear a larger percentage of such amounts . . . ." *Id.* ¶ 104.  Plaintiffs claim this was a breach of contract but do not identify the contract provision that allegedly was breached.

The complaint asserts eight claims:  (1) for false advertising under the Federal Trade Commission Act, 15 U.S.C. § 41, *et seq.*, with respect to the RSUs, Compl. ¶¶ 77-87; (2) for false advertising under sections 349 and 350 of the New York General Business Law, *id.* ¶¶ 88-99; (3) for breach of contract with respect to plaintiffs' alleged net commissions, *id.* ¶¶ 100-08; (4) for breach of the implied covenant of good faith and fair dealing, *id.* ¶¶ 109-115; (5) for misrepresentation and fraud with respect to the RSUs, *id.* ¶¶ 116-29; (6) for securities fraud with respect to the RSUs, *id.* ¶¶ 130-49; (7) a putative stockholder derivative claim against "Juno and Talmon Marco" with respect to the RSUs, *id.* ¶¶ 150-62; and (8) for conversion with respect to plaintiffs' alleged net commissions, *id.* ¶¶ 163-71.

**ARGUMENT**

I.  **THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF
    SUBJECT MATTER JURISDICTION.**

"'Federal courts are courts of limited jurisdiction' that 'possess only that power authorized by Constitution and statute.'" *Hendrickson v. United States*, 791 F.3d 354, 358 (2d Cir. 2015) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S. Ct. 1673, 1675 (1994)).  Because their jurisdiction is circumscribed, "federal court[s] must presume[] that a cause lies outside [their] limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *In re Standard & Poor's Rating Agency Litig.*, 23 F. Supp. 3d 378, 385 (S.D.N.Y. 2014) (internal quotations omitted).

On a motion to dismiss under Federal Rule 12(b)(1), the court does not grant the complaint every favorable inference with respect to its jurisdictional allegations. *Arbitron, Inc. v. 3 Cities, Inc.*, 438 F. Supp. 2d 216, 217 (S.D.N.Y. 2006).  Instead, "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Crye Precision LLC v. Duro Textiles, LLC*, 112 F. Supp. 3d 69, 75 (S.D.N.Y. 2015) (quoting *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014)).  Plaintiffs have not met that burden here.[3]

A.  <u>**Plaintiffs Have Not Alleged A Federal Claim.**</u>

Federal district courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.  A claim arises under federal law "only when a right or immunity created by the Constitution or laws of the United

---

[3] In assessing whether the plaintiff has met its burden, the "district court may consider evidence outside the pleadings, such as affidavits and exhibits." *Duff & Phelps, LLC v. Vitro S.A.B. de C.V.*, 18 F. Supp. 3d 375, 382 (S.D.N.Y. 2014) (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

States is an essential element of the cause of action."  *New York v. Shinnecock Indian Nation*, 686 F.3d 133, 138 (2d Cir. 2012) (internal quotations omitted); *see also Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S. Ct. 2425, 2429 (1987) (discussing "well-pleaded complaint" rule in the context of removal).

In this case, federal question jurisdiction has not been pleaded because there is no private right of action for the only federal claim asserted – for "false advertising" under the Federal Trade Commission Act.  Compl. ¶¶ 77-87; *see Alfred Dunhill Ltd. v. Interstate Cigar Co.*, 499 F.2d 232, 237 (2d Cir. 1974) (Act does not "bestow upon either competitors or consumers standing to enforce its provisions"); *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 456 (E.D.N.Y. 2013) ("private parties do not have standing to sue under the FTCA"); *see also Manning Int'l Inc. v. Home Shopping Network, Inc.*, 152 F. Supp. 2d 432, 437 (S.D.N.Y. 2001) (same). Plaintiffs are not permitted to "invoke the jurisdiction of the federal district courts" on the basis of this claim.  *Hughes*, 930 F. Supp. 2d at 456 (quoting *Dreisbach v. Murphy*, 658 F.2d 720, 730 (9th Cir. 1981)).

The only other cause of action in which plaintiffs even reference a federal statute is Count V, which asserts a state law claim for "misrepresentation and fraud."  *See* Compl. ¶¶ 116-29.  In contending that plaintiffs were misled about their RSUs, plaintiffs allege, *inter alia*, that "Juno[, Inc.] failed to register" the RSUs.  *Id.* ¶ 127 (citing 15 U.S.C. §§ 77e, 78*l*(g), (h)).  But no federal claim is asserted on that basis (for example, for sale of unregistered securities). Instead, the alleged registration failure is cited as one of many factual predicates for plaintiffs' misrepresentation claim.  *See id.* ¶¶ 118-19.  The "mere reference" to these federal statutes "is an insufficient basis for the exercise of federal jurisdiction."  *Elmaliach v. Bank of China Ltd.*, No. 09 Civ. 2130 (PGG), 2010 WL 1172829, at *8 (S.D.N.Y. Mar. 26, 2010); *see also Knight-*

*Harris v. Wells Fargo Bank, N.A.*, No. 16 Civ. 2605 (ER), 2017 WL 238439, at *4 (S.D.N.Y. Jan. 18, 2017).  Finally, plaintiffs' claim for "securities fraud" (Count VI) makes no mention of federal law and cannot be construed to be a federal claim.[4]  *See* Compl. ¶¶ 130-49.

### B.      Plaintiffs Have Not Alleged the Elements of Diversity Jurisdiction.

Similarly, the complaint does not plead the elements of diversity jurisdiction, which requires that "complete diversity exists between the parties and the amount in controversy exceeds $75,000."  *Cohen v. KIND L.L.C.*, 207 F. Supp. 3d 269, 271 (S.D.N.Y. 2016); *see Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*, 921 F. Supp. 2d 158, 162 & n.18 (S.D.N.Y. 2013) (discussing complete diversity); 28 U.S.C. § 1332(a)(1).  Neither requirement is met here.

Each of the plaintiffs alleges that he is a United States citizen who lives in New York. Compl. ¶¶ 19-21.  Complete diversity does not exist because GT Forge is a Delaware corporation with its principal place of business in New York, and Juno USA, LP and Vulcan Cars LLC therefore must be considered New York citizens for diversity analysis.  *See* Compl. ¶ 25 (GT Forge "transact[s] business in" New York); Ben-David Decl. ¶ 3; 28 U.S.C. § 1332(c)(1).[5]

---

[4] If the securities fraud count were a federal claim, plaintiffs would be subject to provisions of the Private Securities Litigation Reform Act of 1995, which requires plaintiffs to provide sworn certifications, to publish notice that the action had been filed so that others could compete to serve as "lead plaintiff," and to file lead plaintiff motions, 15 U.S.C. § 78u-4(a)(1) - (3).  That statute also requires securities fraud plaintiffs to plead factual allegations giving rise to a "strong inference" of each defendant's scienter.  15 U.S.C. § 78u-4(b)(2)(A); *see Tellabs, Inc.*, 551 U.S. at 323, 127 S. Ct. at 2509-10.  Plaintiffs have not attempted to fulfill any of these statutory obligations.

[5] Because GT Forge is a partner in Juno USA, LP, the partnership also is deemed a New York citizen for diversity analysis.  *See Herrick Co. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 322 (2d Cir. 2001).  Similarly, Juno USA, LP owns Vulcan Cars LLC, deeming that entity a New York citizen for that purpose.  *Bischoff v. Boar's Head Provisions Co.*, 436 F. Supp. 2d 626, 634 (S.D.N.Y. 2006) (LLC "has the citizenship of each of its members").

Plaintiffs also do not satisfy the $75,000 amount-in-controversy requirement.  Plaintiffs bear "the burden of proving that it appears to a reasonable probability that the claim is in excess of the statutory jurisdictional amount."  *Mehlenbacher v. Akzo Nobel Salt, Inc.*, 216 F.3d 291, 296 (2d Cir. 2000).  "[S]eparate and distinct claims raised by different plaintiffs may not be aggregated to satisfy the jurisdictional amount in controversy."  *Id.* & n.7.  In this case, plaintiffs have not provided any specific allegations concerning their alleged damages, but from the complaint it is clear that any such damages are less than $75,000 for any plaintiff's claims given the small number of RSUs at issue and the limited time when plaintiffs were Juno drivers.  It therefore appears from the face of the complaint itself to be a legal certainty that the amount-in-controversy requirement is not met.  *Scherer v. Equitable Life Assurance Soc'y of the U.S.*, 347 F.3d 394, 397 (2d Cir. 2003); *see* Compl. ¶¶ 54-61, 100-15, 145, 163-71.[6]

**C.     There Is No Basis to Exercise Supplemental Jurisdiction.**

Because the Court cannot exercise original jurisdiction, supplemental jurisdiction over plaintiffs' state law claims also is not available.  *See* 28 U.S.C. § 1367(a).

**II.     THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM AGAINST GT FORGE, JUNO USA, OR VULCAN CARS.**

In the alternative, the claims against GT Forge, Juno USA, and Vulcan Cars should be dismissed pursuant to Federal Rule 12(b)(6) for failure to state a claim.  To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *AVRA Surgical Robotics, Inc. v. Gombert*, 41 F. Supp. 3d 350, 357 (S.D.N.Y. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949

---

[6]  Nor are plaintiffs excused from these diversity requirements by the Class Action Fairness Act.  *See* 28 U.S.C. § 1332(d).  Each of the plaintiffs waived the right to participate in any class action about these issues, which precludes reliance on CAFA to establish diversity jurisdiction.  28 U.S.C. § 1332(d)(2); *see* Ben-David Decl., Exhs. A, B & C; *see infra* at 21.

(2009)); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). While a court must accept a plaintiff's factual allegations as true and draw all reasonable inferences in favor of the non-moving party, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965, and the pleading is not sufficient "if it tenders 'naked assertions' devoid of further factual enhancement.'" *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1966).

In addition, "[a] complaint should 'give the adverse party fair notice of the claim[s] asserted so as to enable him to answer and prepare for trial.'" *Taylor v. N.Y. Life Ins. & Annuity Corp.*, No. 16-cv-06121 (PKC), 2017 WL 2773699, at *3 (S.D.N.Y. June 26, 2017) (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)). This standard is not met where the complaint "lump[s] all the defendants together in each claim and provid[es] no factual basis to distinguish their conduct . . . ." *Id.* (quoting *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001)); *accord Patrico v. Voya Fin., Inc.*, No. 16 Civ. 7070 (LGS), 2017 WL 2684065, at *5 (S.D.N.Y. June 20, 2017) (dismissing claims against defendants that were affiliated with party to agreement underlying the dispute). "Where a complaint names multiple defendants, that complaint must provide a plausible factual basis to distinguish the conduct of each of [them]." *Ochre LLC v. Rockwell Architecture Planning & Design, P.C.*, No. 12 Civ. 2837 (KBF), 2012 WL 6082387, at *6 (S.D.N.Y. Dec. 3, 2012). Plaintiffs' claims against GT Forge, Vulcan Cars, and Juno USA suffer from a number of pleading deficiencies that require dismissal.[7]

_____

[7] New York law applies to most of plaintiffs' claims under any conceivable choice-of-law analysis. *See Specht v. Netscape Commc'ns Corp.*, 150 F. Supp. 2d 585, 590-91 & n.7 (S.D.N.Y. 2001). Plaintiffs allege that they live and work in New York City, Compl. ¶¶ 2, 19-21, that the conduct alleged was designed to recruit drivers who had "TLC-licenses" and "the right insurance

**A.   Plaintiffs Have Not Alleged a Viable Claim for "False Advertising" Under Either Federal or State Law.**

**1.   There Is No Private Right of Action Under the Federal Trade Commission Act.**

Plaintiffs' first claim, for "false advertising" under the Federal Trade Commission Act, must be dismissed because "the provisions of the [Act] may be enforced only by the Federal Trade Commission.  Nowhere does the Act bestow upon either competitors or consumers standing to enforce its provisions." *Alfred Dunhill Ltd.*, 499 F.2d at 237 (collecting citations); *see supra* at 7-9.[8]

**2.   Plaintiffs Have Not Stated a Claim Under Sections 349 and 350 of the New York General Business Law.**

Plaintiffs' "false advertising" claim under sections 349 and 350 of the New York General Business Law also is legally deficient.  Compl. ¶¶ 88-99.  To state a claim under either provision, plaintiffs must allege (1) a "challenged act" that was "consumer-oriented"; (2) and "was misleading in a material way;" and (3) that plaintiffs suffered injury as a result.  *Axiom Inv. Advisors, LLC v. Deutsche Bank AG*, ___ F. Supp. 3d ___, 2017 WL 590320, at *5 (S.D.N.Y. Feb. 13, 2017) (quoting *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29, 709 N.Y.S.2d 892, 895 (2000)).[9]

---

to operate a taxi in New York City", *id.* ¶ 4, and both the RSU Plan and plaintiffs' driver agreements are governed by New York law, *see* Ben-David Decl., Exhs. A, B, & C § 14.1.

[8] Plaintiffs have not asserted a claim under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, for false advertising, but even if they had done so it would be subject to dismissal for lack of standing.  *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1390 (2014) ("to come within the zone of interests in a suit for false advertising under [the Lanham Act], a plaintiff must allege an injury to a commercial interest in reputation or sales").

[9] Section 349 declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."  N.Y. Gen. Bus. L. § 349(a).  Section 350, in turn, prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state."  *Id.* § 350.

Claims under sections 349 and 350 are available only to "an individual consumer who falls victim to misrepresentations made by a *seller of consumer goods* through false or misleading advertising." *Eaves v. Designs for Fin., Inc.*¸ 785 F. Supp. 2d 229, 265 (S.D.N.Y. 2011) (emphasis added) (quoting *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 55, 698 N.Y.S.2d 615, 620 (1999)).  A "consumer," for this purpose, is a person "who purchase[s] goods and services for personal, family or household use." *Exxonmobil Inter-America, Inc. v. Advanced Info. Eng'g Servs., Inc.*, 328 F. Supp. 2d 443, 448 (S.D.N.Y. 2004) (internal quotations omitted); *see also Sheth v. N.Y. Life Ins. Co.*, 273 A.D.2d 72, 73, 709 N.Y.S.2d 74, 75 (1st Dep't 2000) (dismissing claim where alleged conduct was directed "only at prospective insurance agents").

There are no "consumer oriented" acts at issue in the claims here.  Instead, the complaint makes clear that it is communications with prospective drivers, not communications with any consumer, that are the basis for plaintiffs' "false advertising" claims.  *See, e.g.,* Compl. ¶ 97 (plaintiffs allegedly harmed when they "chose to receive $100 in RSUs instead of cash," "ended up earning less money working for Juno," and "suffered embarrassment and damage" as "the face of Juno").  Nor have plaintiffs alleged a "deceptive act," which means conduct "likely to *mislead a reasonable consumer* acting reasonably under the circumstances." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26, 623 N.Y.S.2d 529, 533 (1995) (emphasis added).  The conduct alleged in the complaint was not directed toward consumers at all.  This claim also fails to allege which defendants (if any) allegedly engaged conduct that plaintiffs believe to have been "deceptive." *See infra* at 15-18.

13

### B.   Plaintiffs Do Not Plead an Actionable Claim for Misrepresentation, Fraud, or Securities Fraud.

In Counts V and VI, plaintiffs assert claims for "Misrepresentation and Fraud" and "Securities Fraud" based on the contention that "Juno purposefully misrepresented the terms and conditions of its RSU program" to induce them "to leave Uber and Lyft and join Juno." Compl. ¶ 118; *see id.* ¶¶ 116-29, ¶¶ 130-49.   These fraud claims are subject to the pleading requirements of Federal Rule 9(b), under which a plaintiff must:  "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent."  *Fin. Guar. Ins. Co. v. Putnam Advisory Co.*, 783 F.3d 395, 403 (2d Cir. 2015) (quotation omitted).  The complaint does not meet these requirements.

### 1.   Plaintiffs' "Group Pleading" of Fraud Requires Dismissal.

Under Rule 9(b), a plaintiff alleging fraud cannot make "blanket references to acts or omissions by all of the defendants"; instead, "each defendant named in the complaint is entitled to be apprised of the circumstances surrounding the fraudulent conduct with which he individually stands charged."  *Ritani, LLC v. Aghjayan*, 970 F. Supp. 2d 232, 250 (S.D.N.Y. 2013) (quoting *Red Ball Interior Demolition Corp. v. Palmadessa*, 874 F. Supp. 576, 584 (S.D.N.Y. 1995)).

In both Count V and Count VI, however, only "Juno" is alleged to have made any statements, yet plaintiffs seek recovery from all of the defendants.  Compl. ¶¶ 117, 131. Plaintiffs define "Juno" to mean Juno USA, LP.  *Id.* ¶ 1.  However, the RSUs were issued by non-party Juno, Inc., not by Juno USA, and plaintiffs' independent driver agreements were entered into with Vulcan Cars.  *See* Ben-David Decl., Exhs. A, B, & C.  The only role played by GT Forge, according to the complaint, was that it is affiliated with the buyer of Juno assets in an

April 2017 transaction that occurred *after* all of the misstatements and omissions allegedly were made. *See* Compl. ¶¶ 7, 42.

Plaintiffs' pleading tactic does not allow any of these defendants to determine the alleged misconduct with which they are being charged and makes it impossible to identify specific statements that were purportedly fraudulent. That approach requires dismissal. *Ritani*, 970 F. Supp. 2d at 250 (dismissing fraud claim where plaintiff "conflate[d] the acts of [the defendants], such that th[e] particular acts with which they are charged cannot be determined"); *Bangkok Crafts Corp. v. Capitolo di San Pietro in Vaticano*, 331 F. Supp. 2d 247, 254 (S.D.N.Y. 2004) (dismissing fraud claim where complaint "lump[ed] together" the defendants, thus rendering it impossible to "determine[] which . . . defendant made what specific statement [or] when they were made").

### 2. Plaintiffs Have Not Alleged Any Actionable Misstatement or Omission.

In Count V, plaintiffs allege without detail that "Juno" "purposefully misrepresented the terms and conditions of its RSU program to the plaintiffs and the putative class members" and "purposefully omitted material terms and conditions of its RSU program." Compl. ¶¶ 118-19. Plaintiffs do not explain which terms and conditions allegedly were misrepresented or omitted, where and when they allegedly occurred, who made the purported misrepresentations, or why they were allegedly fraudulent.[10]

---

[10] To the extent plaintiffs' theory is that "Juno" fraudulently induced them to start driving for Juno because it allegedly "had no intention of ever allowing the . . . RSUs to vest" or to offer plaintiffs "fair market value for their RSUs," *id.* ¶¶ 122-23, the claim is an impermissible attempt to convert a claim for breach of contract into a claim "for fraud merely by alleging that the contracting party did not intend to meet its contractual obligations." *Rocanova v. Equitable Life Ins. Soc'y*, 83 N.Y.2d 603, 614, 612 N.Y.S.2d 339, 343 (1994). Plaintiffs' contract-based claims are addressed below. *See infra* at 19-23.

The allegations supporting plaintiffs' claim of "securities fraud" (Count VI) are similarly sparse.  Plaintiffs allege that "Juno" never provided them "any specific information regarding the RSU program," such as the requirements for vesting, and never provided them "with regular reports stating the RSUs earned . . . ."  *Id.* ¶¶ 133, 134.   Besides conflicting with their own allegations (which demonstrate that plaintiffs knew the RSUs' terms), plaintiffs' securities fraud claim does not explain how the alleged failure to provide the omitted information rendered misleading any statement that was made to them.[11]  *See id.* ¶¶ 133-37.

Plaintiffs vaguely allege that:  (i) "Juno promoted and advertised that its drivers were owners in the company and that it would distribute equity to all its drivers, with equal distributions being made until the year 2026, at which point 50% of the Company shall have been distributed to drivers"; and (ii) Juno represented "that it operate[d] in a way that granted drivers a real chance to share in the profits of the company."  *Id.*   ¶ 35.   According to the complaint, drivers received a communication through their mobile app that stated as follows:

> When Juno was created, half of the founding shares were reserved for drivers.  Every three months, we allocate 25,000,000 Juno Restricted Stock Units (RSUs) to drivers.  Each RSU may become one [share of] Juno common stock *if certain conditions are met in the future.  These include meeting minimum service requirements and the occurrence of an IPO or acquisition of Juno within 7 years of the draft date.*  The more you drive, the more RSUs you earn.

---

[11]  The complaint alleges that plaintiffs were well aware of the relevant terms of the RSUs.  *See, e.g.,* Compl. ¶ 40 (drivers "were rewarded . . . [for] meeting Juno's hourly requirement of 120 hours per month" to earn equity),   ¶ 41 ("[m]onth after month, [p]laintiffs worked the required 120 hours and their Juno 'Driver App' would notify them of the amount of additional shares they had acquired"), *id.* ¶ 66 (drivers informed that "[e]ach RSU may become one [share of] Juno common stock if certain conditions are met in the future" including "meeting minimum service requirements and the occurrence of an IPO or acquisition of Juno within 7 years").

*Id.* ¶ 66 (emphasis added).   These statements were entirely consistent with the terms and conditions of the RSUs, which were set forth in the RSU Plan.[12]

As Juno drivers allegedly were told, the RSU Plan set aside 225 million shares of Juno, Inc. common stock, to be issued in exchange for vested RSUs, which amounted to one-half of Juno, Inc.'s total outstanding shares.  Sterngold Decl., Exh. A, RSU Plan § 2.1.  Also consistent with plaintiffs' allegations, the award agreement and RSU Plan provided that RSUs would vest only if (i) a driver had driven at least 120 hours for Juno during 24 months out of a period of 30 consecutive months, and (ii) within seven years of an RSU award, there was either an IPO or a "change in control" of Juno, Inc.  Sterngold Decl. Exh. A, RSU Plan § 21 & Form Grant Notice and Award Agreement.

Given plaintiffs' allegation that Juno "launched in or around February 2016," Compl. ¶ 34, and given the April 6, 2016 effective date of the RSU Plan, none of the recipients of RSUs could have satisfied the 24 month minimum service requirement by the date of the Gett transaction in April 2017.   Therefore, it was entirely consistent with the governing terms and conditions of the RSUs that they allegedly "either were extinguished for no value, or extinguished in exchange for *de minimis* cash consideration," as plaintiffs contend.[13]   *Id.* ¶ 9.

---

[12]  In Count VI, the complaint also alleges that Juno "purposefully diluted the value of [p]laintiffs and putative class members' RSUs" and "conspired to manipulate the fair market value of [p]laintiffs and putative class members' RSUs."  Compl. ¶¶ 141-42.  Under New York law, a "securities fraud" claim based on such allegations is only available under the Martin Act, N.Y. Gen. Bus. Law § 352-c(1)(a); *see Assured Guar. (UK) Ltd v. J.P. Morgan Inv. Mgmt. Inc.*, 18 N.Y.3d 341, 353, 939 N.Y.S.2d 274, 279 (2011), and there is no implied private right of action under that statute, *CPC Int'l Inc. v. McKesson Corp.*, 70 N.Y.2d 268, 276-77, 519 N.Y.S.2d 804, 806-07 (1987).

[13]  Plaintiffs' assertion that RSUs were "impermissibly extinguished" for drivers who stopped driving for Juno, Compl. ¶¶ 146-47, is similarly contradicted by the relevant RSU documents.  Under the form of RSU award agreement, if a driver "is terminated for any reason . . . all RSUs as to which the Active Requirement has not been satisfied as of the date of such termination shall automatically terminate . . . ."  Sterngold Decl., Exh. A, RSU Award

In addition, statements of "Juno's" future intentions concerning the amount of equity it hoped to distribute are not actionable as fraud.  There are no particularized factual allegations (as opposed to conclusory assertions) to support an inference that those statements were knowingly false when made, that is, that the alleged speakers never intended to abide by their supposed promises.  *See, e.g.*, *ICBC (London) PLC v. Blacksands Pac. Grp., Inc.*, No. 15 Civ. 0070 (LAK), 2015 WL 5710947, at *10 & n.111 (S.D.N.Y. Sept. 29, 2015) (unfulfilled promise insufficient to maintain a fraud claim); *Sun Micro Med. Techs. Corp. v. Passport Health Commc'ns, Inc.*, No. 06 Civ. 2083 (RWS), 2006 WL 3500702, at *11 (S.D.N.Y. Dec. 4, 2006).

### 3.    Plaintiffs Could Not Have Reasonably Relied on Statements Concerning the RSUs that Differed from the RSU Plan.

To the extent plaintiffs contend that they were told the RSUs had terms and conditions that contradicted the RSU Plan, the fraud claims fail to allege reasonable reliance.  Under New York law, "reasonable reliance is precluded when an express provision in a written contract contradicts a prior alleged oral representation in a meaningful fashion."  *Colonial Funding Network, Inc. for TVT Capital, LLC v. Epazz, Inc.*, ___ F. Supp. 3d ___, 2017 WL 1944125, at *6 (S.D.N.Y. May 9, 2017); *see also Morrissey v. Gen. Motors Corp.*, 21 F. App'x 70, 73 (2d Cir. 2001) (reliance on oral promises unreasonable when they "directly contradict[ed] the terms of" the relevant agreements); *Schlenger v. Fid. Emp'r Servs. Co.*, 785 F. Supp. 2d 317, 353 (S.D.N.Y. 2011) (dismissing fraudulent inducement claim where the plaintiff failed to "allege facts showing how it could be reasonable to rely on pre-employment general promises when they are followed by a specific written contract"); *Clifton v. Vista Computer Servs., LLC*, No. 01 Civ.

---

Agreement § 4.  Because no terminated Juno driver could have driven for 24 months as of the date of his or her termination, RSUs for those drivers were terminated automatically.

10206 (JSM), 2002 WL 1585550, at *4 (S.D.N.Y. July 16, 2002) (dismissing fraud claim because oral representation was directly at odds with contract provision).

### 4.   **Plaintiffs Have Not Pleaded Cognizable Injury.**

Plaintiffs also fail to allege that the alleged misrepresentations or omissions proximately caused them cognizable harm.  Fraud plaintiffs are limited to "actual pecuniary losses," which "must be the direct, immediate, and proximate result of the misrepresentation."  *Reis, Inc. v. Spring11 LLC*, No. 15 Civ. 2836 (PGG), 2016 WL 5390896, at *12 (S.D.N.Y. Sept. 26, 2016) (quoting *Kregos v. Associated Press*, 3 F.3d 656, 665 (2d Cir. 1993)).  "[A] fraud action cannot be maintained where the damages attributable to the fraud are speculative or undeterminable." *Semerdjian v. McDougal Littell*, No. 07 Civ. 7496 (LMM), 2008 WL 110942, at *2 (S.D.N.Y. Jan. 2, 2008) (internal quotations omitted).

Plaintiffs here claim that they "relied upon Juno's misrepresentations of the RSU program by leaving Uber, Lyft, and other employment in order to join Juno and work for *inter alia* an equity stake in the company."  Compl. ¶ 128.  However, there was no need for plaintiffs or other drivers to stop driving for Uber or Lyft in order to drive for Juno; in fact, the complaint alleges that plaintiffs continued to drive for other services while promoting Juno to their customers.  *See id.* ¶ 4.  The unsupported contention that they "suffered pecuniary losses" as a result, *id.* ¶ 129, is speculative at best and insufficient.

### C.   **Plaintiffs' Have Not Alleged an Actionable Breach of Contract.**

In Count III of the complaint, plaintiffs assert a claim for breach of contract against all defendants for a breach of contract by "Juno."  According to plaintiffs, "Juno" "improperly calculated its commission based upon the net fare," and "failed to reimburse [p]laintiffs and putative class members" for taxes and ancillary fees.  Compl. ¶¶ 104, 107.  This claim suffers from several pleading deficiencies.

*First*, the complaint never identifies the parties to the alleged contract or the terms of the contract provision that allegedly was breached. A party claiming a breach of contract must "identify what provisions of the contract were breached as a result of the acts at issue." *Wolff v. Rare Medium, Inc.*, 171 F. Supp. 2d 354, 358 (S.D.N.Y. 2001). "[S]tating in a conclusory manner that an agreement was breached," as plaintiffs have done here, "does not sustain a claim of breach of contract." *Chefs Diet Acquisition Corp. v. Lean Chefs, LLC*, No. 14-CV-8467 (JMF), 2016 WL 5416498, at *8 (S.D.N.Y. Sept. 28, 2016) (bracketing and citation omitted).

*Second*, plaintiffs' independent driver agreements do not include a provision concerning "net commissions" or for reimbursement for taxes and ancillary fees. *See* Ben-David Decl., Exhs. A, B, & C. Instead, the agreements provide for payments to be "calculated as detailed by the Company for the applicable Territory in the Company FAQs in the Driver App or on its website." *Id.* § 7.1. Vulcan Cars reserved the right to change this pay structure, and if a driver continued to drive for the Juno brand after being notified of such changes it would "constitute [the driver's] consent to such change." *Id.* § 7.2. Plaintiffs have not alleged that the Driver App or Juno website included the terms that were breached, nor have plaintiffs addressed whether there were ever changes in terms that plaintiffs accepted by their continued performance.

*Third*, because their contracts are with Vulcan Cars, plaintiffs cannot have any claim for breach of contract with respect to commission fees or other compensation under those agreements against GT Forge or Juno USA. *See, e.g.*, *Rennaker Co. Consulting, Inc. v. TLM Grp., LLC*, No. 16 Civ. 3787 (DAB), 2017 WL 2304302, at *2 (S.D.N.Y. May 18, 2017) ("It is black letter law that non-parties ordinarily cannot be held liable for a breach of contract.").

*Finally*, even if plaintiffs otherwise had alleged a breach of contract, they have waived any right to assert such a claim on behalf of a putative class.  In that regard, section 14.2 of plaintiffs' independent driver agreements provides:

> **THE PARTIES UNDERSTAND AND ACKNOWLEDGE THAT BY SIGNING THIS AGREEMENT THEY SPECIFICALLY WAIVE ANY RIGHT TO PARTICIPATE IN ANY CLASS ACTION OR COLLECTIVE ACTION AS AGAINST THE OTHER PARTY, REGARDLESS WHETHER IN COURT OR IN ARBITRATION.  IF AT ANY TIME YOU ARE DEEMED A MEMBER OF ANY CLASS CREATED BY ANY COURT, ARBITRATOR OR ANY OTHER TRIBUNAL, YOU WILL "OPT OUT" OF SUCH CLASS AT THE FIRST OPPORTUNITY, AND SHOULD ANY THIRD PARTY PURSUE ANY CLAIMS ON YOUR BEHALF YOU SHALL WAIVE YOUR RIGHTS TO MONETARY RECOVERY WITH RESPECT TO SUCH CLAIMS.**

Ben-David Decl., Exhs. A, B, & C, § 14.2 (emphasis in original).  Class action waiver provisions such as this one are enforceable, whether or not entered into in connection with an arbitration agreement.  *U1it4Less, Inc. v. FedEx Corp.*, No. 11-cv-1713 (KBF), 2015 WL 3916247, at *3-5 (S.D.N.Y. June 25, 2015) (discussing *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2311 (2013)); *see also Kai Peng v. Uber Techs., Inc.*, ____ F. Supp. 3d ____, 2017 WL 722007, at *16-17 (E.D.N.Y. Feb. 23, 2017).

### D.   Plaintiffs Have Not Alleged a Breach of the Implied Covenant of Good Faith and Fair Dealing.

As with the breach of contract claim, plaintiffs' claim for breach of implied duty of good faith and fair dealing fails to allege the essential elements of such a claim.  *See* Compl. ¶¶ 109-15.  The implied covenant of good faith and fair dealing prohibits parties from acting in a manner that "will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."  *Granite Partners, L.P. v. Bear, Stearns & Co.*, 17 F. Supp. 2d 275, 305 (S.D.N.Y. 1998).  "Where [a] contract contemplates the exercise of discretion," a party has a duty "not to act arbitrarily or irrationally in exercising that discretion."  *Dalton v. Educ. Testing*

21

*Serv.*, 87 N.Y.2d 384, 389, 639 N.Y.S.2d 977, 979 (1995).  However, "no obligation can be implied that would be inconsistent with other terms of the contractual relationship."  *Id.* at 389, 639 N.Y.S.2d at 980 (internal quotations omitted).

In this instance, plaintiffs do not identify the "fruits of the contract" that they were allegedly deprived of, nor do they point to any discretion that was exercised improperly by any defendant that deprived them of those benefits.  The complaint instead alleges only that "Juno" violated the implied covenant "by engaging in the misleading and deceptive acts and practices described above . . . ."  Compl. ¶ 114.  This conclusory assertion is not sufficient.  To the extent, however, that plaintiffs merely intended to reiterate their breach of contract claim, the claim should be dismissed on that ground alone.  *See Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002).

### E.      Plaintiffs Have Not Alleged a Claim for Conversion.

A conversion claim under New York law requires a plaintiff to allege a "possessory right or interest" in property and the defendant's "dominion over" or "interference with" that property "in derogation of the plaintiff's rights."  *OTG Brands, LLC v. Walgreen Co.*, No. 13-cv-09066 (ALC), 2015 WL 1499559, at *9 (S.D.N.Y. Mar. 31, 2015) (quoting *Pappas v. Tzolis*, 20 N.Y.3d 228, 234, 958 N.Y.S. 2d 656, 660 (2012)).  When the claim concerns money, it must be "specifically identifiable and be subject to an obligation to be returned."  *Id.* at *9.  Plaintiffs' claim for conversion here should be dismissed for several reasons.

*First*, the claim seeks the identical relief as plaintiffs' claim for breach of contract, namely, recovery for commission fees that "Juno" allegedly withheld improperly in breach of the parties' agreement.  *Compare* Compl. ¶¶ 100-08 *with id.* ¶¶ 163-71.  "[W]here a conversion claim is grounded in a contractual dispute, the plaintiff 'must show acts that were unlawful or wrongful as opposed to mere violations of contractual rights."  *OTG Brands*, 2015 WL 149955,

at *9.   There are no such allegations here, and the redundant conversion claim should be dismissed.  *See, e.g.*, *Universe Antiques, Inc. v. Vareika*, 826 F. Supp. 2d 595, 607 (S.D.N.Y. 2011) (denying motion to amend to assert conversion claim because it was duplicative of breach of contract claim).

*Second*, plaintiffs have not alleged a "possessory right or interest" in any specifically identifiable property.   Instead, they allege that "Juno" "miscalculat[ed] its commission fee" by basing it on the net fare after deducting taxes and fees.  Compl. ¶ 165.  This is the essence of a contract claim, not conversion.   Similarly, they claim that "Juno" "unlawfully" withheld the value of plaintiffs' RSUs and cancelled them.  *Id.* ¶¶ 167, 168.  But as previously discussed, the RSUs never vested and Juno, Inc. had the right to cancel the RSUs under the RSU Plan.

*Finally*, plaintiffs once again impermissibly assert this claim against all of the defendants and do not identify which entity allegedly "converted" their property.

### F.   Plaintiffs Do Not Have Standing to Assert a Shareholder Derivative Claim on Behalf of Juno USA, LP.

In Count VII, plaintiffs purport to assert a derivative claim in their capacity as "shareholders of Juno," which they have defined to mean Juno USA, LP (which is a partnership rather than a corporation).  Compl. ¶ 151.  In that claim, plaintiffs demand an accounting from Juno USA and defendant Talmon Marco for "all sums of money and for all benefits received by them" at plaintiffs' expense, *id.* ¶ 152,  and assert claims against those two defendants for breach of fiduciary duty and other alleged wrongs.

Plaintiffs do not have standing to assert that claim because they are not holders of partnership interests in Juno USA, LP.  Compl. ¶ 22; *see* 6 Del. C. § 17-1002 ("In a derivative action, the plaintiff must be a partner or an assignee of a partnership interest at the time of

bringing the action . . . .").[14]  To the extent their RSUs gave them standing to assert derivative claims on behalf of any entity, that entity would be Juno, Inc., a non-party, which is the issuer of the RSUs and the sponsor of the RSU Plan.  However, the RSU Plan makes clear that RSU holders have no such rights, *see* Sterngold Decl. Exh. A, RSU Plan § 7, and the admitted cancellation of the RSUs also would give rise to standing issues.  Irrespective of these challenges in such a hypothetical proceeding, however, plaintiffs' derivative claims as putative "shareholders" of Juno USA must be dismissed.[15]

## III.   THE CLAIMS OF TWO NAMED PLAINTIFFS SHOULD BE DISMISSED IN FAVOR OF ARBITRATION.

The independent driver agreements entered into by each of the named plaintiffs include a broad agreement to arbitrate claims "arising out of or relating to" those agreements as well as any disputes with Vulcan Cars or its affiliates "in connection with any future relationship of any kind between you and the Company."  Ben-David Decl., Exhs. A, B, & C, § 15.2.  Drivers were permitted to opt out of this provision, but two of the three named plaintiffs – Mohammed Siddique and Mohammed Islam – affirmatively consented to it.  *See id.*, Exh. A at 18 & Exh. C at 19.  Their agreement to arbitration requires dismissal of all claims asserted by these two plaintiffs.

"Well-established federal public policy strongly favors arbitration as an 'alternative means of dispute resolution.'"  *China Media Exp. Holdings, Inc. by Barth v. Nexus Executive Risks, Ltd.*, 182 F. Supp. 3d 42, 48 (S.D.N.Y. 2016) (citation omitted); *see* 9 U.S.C. § 1, *et seq.*

---

[14] Under the internal affairs doctrine, questions relating to the internal affairs of Juno USA, LP, a Delaware limited partnership (*see* Compl. ¶ 22) are decided by reference to Delaware law.  *See, e.g.*, *Prickett v. N.Y. Life Ins. Co.*, 896 F. Supp. 2d 236, 248 (S.D.N.Y. 2012) (applying Delaware law to derivative claims asserted on behalf of limited partnership).

[15] Count VII also impermissibly combines individual claims, *see* Compl. ¶¶ 152-56, with derivative claims, *see id.* ¶¶ 157-61, which is another ground for dismissal.  *Abrams v. Donati*, 66 N.Y.2d 951, 953, 498 N.Y.S.2d 782, 783 (1985).

When, as here, there is a broad arbitration agreement, "there is a presumption that the claims are arbitrable." *Collins & Aikman Prods. Co. v. Building Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995).

The arbitration agreement here delegates threshold questions of arbitrability to the arbitrator. *See* Ben-David Decl., Exhs. A, B, & C, § 15.2 ("The arbitrator shall have exclusive authority, to the exclusion of any court, to resolve any and all disputes over the validity and enforceability of any part of this agreement to arbitrate."). In those circumstances, courts will enforce the agreement by dismissing the action in favor of arbitration. *See Uber Techs., Inc.*, 2017 WL 722007, at *11. Dismissal of claims asserted by Messrs. Islam and Siddique in favor of arbitration therefore is appropriate.

## CONCLUSION

For all of the foregoing reasons, defendants GT Forge, Juno USA, and Vulcan Cars respectfully request that the Court dismiss all claims asserted against them in the complaint in this action.

Dated: New York, New York  
      August 4, 2017

DLA PIPER LLP (US)

By:    /s/ John J. Clarke, Jr.  
      John J. Clarke, Jr.  
      john.clarke@dlapiper.com  
      Keara M. Gordon  
      keara.gordon@dlapiper.com

1251 Avenue of the Americas  
New York, New York 10020  
Tel:   (212) 335-4500  
Fax:  (212) 884-8520

Attorneys for Defendants  
 GT Forge, Inc., Juno USA, LP, and  
 Vulcan Cars LLC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I am one of the attorneys for defendants GT Forge, Inc, Juno USA, LP, and Vulcan Cars LLC in this action and that on August 4, 2017 I caused a copy of the foregoing memorandum of law to be filed with the Court's ECF system, which will cause notice of its filing to be served electronically upon all counsel who have appeared in this action.

 /s/ John J. Clarke, Jr.
                John J. Clarke, Jr.

-i-